

# UNITED STATES DISTRICT COURT
## Central District of California

Interstate Fire and Casualty Company

**BILL OF COSTS**

V.

Case Number: EDCV 06-593-VAP

Pacific Employers Insurance Company

Judgment having been entered in the above entitled action on ___August 31, 2007___ against ___Interstate Fire and Casualty Co.___,
the Clerk is requested to tax the following as costs:
<br>Date

| | | |
|---|---|---|
| Fees of the Clerk .............................................................. | $ | 0.00 |
| Fees for service of summons and subpoena ........................................ | | 1,284.75 |
| Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case<br>(Expedited or daily transcripts require prior Court Order.)<br>  1.  Trial Transcripts, if requested by the Court or prepared pursuant to stipulation ............ | | 0.00 |
|   2.  Deposition Transcripts (includes non-expedited transcripts, the reporter's appearance fee,<br>    fees for binding, bates stamping, non-expedited shipping & handling, processing fee, ASCII<br>    disks, production and code compliance charge, electronic transmission charge, miniscripts<br>    and witness handling charges) .................................................... | | 3,885.24 |
| Fees and disbursements for printing ...............................................<br>(The costs of copies of an exhibit attached to a document necessarily filed and served.) | | 666.51 |
| Fees for witnesses (itemize on page 2 of 3) ........................................ | | 0.00 |
| Fees for exemplification and copies of papers necessarily obtained for use in the case ............ | | 5,193.06 |
| Docket fees under 28 U.S.C. 1923 ................................................ | | 0.00 |
| Costs as shown on Mandate of Court of Appeals ..................................... | | 0.00 |
| Compensation of court-appointed experts ........................................... | | 0.00 |
| Compensation of interpreters and costs of special interpretation services under 28 U.S.C. 1828 ...... | | 0.00 |
| Other costs to be taxed pursuant to prior Court approval (please itemize) ..................... | | 0.00 |
| | TOTAL  $ | 11,029.56 |

Date: __7·31·09__

Counsel present for
_____ Plaintiff _____ Defendant
✓ No counsel present
Objections filed: ✓ Yes ____ No
Reply filed: ✓ Yes ____ No
Bill of costs taxed in the amount of $ _____
Approved by: _Kerri K. Gray_

SPECIAL NOTE: Attach to your bill an itemization and documentation for requested costs in all categories.

---

## DECLARATION

I declare under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services
for which fees have been charged were actually and necessarily performed. A copy of this bill was mailed today with postage
prepaid to:  See attached proof of service

_[signature]_
Signature of Attorney

Marilyn A. Rogers
Name of Attorney

For: _____ Pacific Employers Insurance Company _____     Date: _September 13, 2007_
<br>Name of Claiming Party

Costs are taxed in the amount of $ **11,029.56** _____ and included in the Judgment.

**TERRY NAFISI** _____ By: _Kerri K. Gray_ _____ **7-31-09**
<br>Clerk of Court                  Deputy Clerk              Date

## Attachment A
## to PEIC's Bill of Costs

## Itemization of Bill of Costs

### Fees for Service of Summons and Subpoena

| | |
|---|---:|
| Fee for service of process, Subpoena to Varner & Brandt | 145.00 |
| Fee for service of process, Subpoena to Republic Western Ins. | 314.75 |
| Fee for service of process, Subpoena to Green Broilet & Wheeler | 75.00 |
| Fee for service of process, Subpoena to Cochran Cherry Givens & Smith | 75.00 |
| Fee for service of process, Subpoena to Sistema Internacional | 580.00 |
| Fee for service of process, Subpoena to Keith Koeller | 95.00 |
| | Total     1,284.75 |

### Fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case

2. Deposition Transcripts:

| | |
|---|---:|
| Depo Transcript for David Farrell | 139.10 |
| Depo Transcript of Charles Norris- Republic's Person Most Knowledgeable- Re: Claims | 319.25 |
| Depo Transcript of Douglas Bell- Republic's Person Most Knowledgeable- Re: Underwriting | 166.75 |
| Depo Fee & Transcript of Kevin Theil- Interstate's Person Most Knowledgeable- Re: Underwriting | 848.18 |
| Depo Transcript of Teresa Donahoe- Interstate's Person Most Knowledgeable- Re: Claims | 492.04 |
| Depo Transcript of Miguel Pulido | 368.55 |
| Depo Transcript of Keith Koeller | 611.14 |
| Depo Transcript of Andrew Slear- PEIC's Person Most Knowledgeable- Re: Claims | 940.23 |
| | Total     3,885.24 |

# Attachment A
## to PEIC's Bill of Costs

## Itemization of Bill of Costs

**Fees and disbursements for printing**
**(The costs of copies of an exhibit attached to a document necessarily filed and served)**

Exhibits to Motion For Summary Judgment -total pages  883
Law Offices of Morales & Gary Invoice number 9513
Copy charges @ .10 page-  88.30
Four copies served on court and parties-                                                     353.20

Exhibits to Opposition to Plaintiff's Motion For Summary Judgement- total pages 603
Copy Tec Invoice number 3876 -Copy charges @ .12 page-   72.36
Four copies-served on court and parties                                                        289.44
Sales Tax on Copy Tec copy charge (8.25%)                                                  23.87
                                                                        Total        313.31

                                                                        Total        666.51

**Fees for exemplification and copies of papers necessarily obtained for use in the case**

Copy charges for documents produced in response to subpoena on SITA by
Dickinson & Associates                                                                    546.34
Copy charges for documents produced in response to subpoena on  Cochran, Cherry    1,560.64
Copy charges for documents produced in response to subpoena on  Varner & Brandt    2,395.39
Copy charges for documents produced in response to subpoena on  Greene, Broillet
& Wheeler                                                                                690.69

                                                                        Total      5,193.06

                                                                        Total     11,029.26

## DECLARATION OF MARILYN A. ROGERS

I, Marilyn A. Rogers, declare as follows:

1.     I am an attorney with the law firm of Morales, Fierro & Reeves, counsel for Defendant Pacific Employers Insurance Company ("PEIC") in this action. I have personal knowledge of the facts contained herein and if called to testify would and could do so competently.

2.     This Declaration is made in support of PEIC's Verified Bill of Costs.

3.     Throughout this litigation, I oversaw the costs incurred in this litigation and authorized the costs listed in this declaration in my role as counsel for PEIC. I can and do verify that the charges set forth in PEIC's Bill of Costs and this declaration and its exhibits are correct and were necessarily incurred in this case and that the services for which the costs have been charged were actually and necessarily performed as set forth below.

4.     On August 31, 2007, the Court entered an Order granting PEIC's Motion for Summary Judgment and denying plaintiff Interstate Fire & Casualty Company's ("Interstate") Cross-Motion for Summary Judgment.   On August 31, 2007, the Court entered Judgment in favor of PEIC on Interstate's complaint. Attached hereto as Exhibit A are true and correct copies of the Court's Order granting PEIC's Motion for Summary Judgment and denying Interstate's Cross-Motion for Summary Judgment and the Court's Judgment in favor of PEIC.

**Fees for Service of Subpoenas**

5.     In this case, PEIC was sued by Interstate for equitable subrogation, contribution and declaratory relief relating to the funding of an over $10,500,000 settlement of nine underlying personal injury cases that arose out of a bus accident in Riverside County, California. The settlement was paid by the primary insurer, Republic Western Insurance Company ("Republic") and Interstate, both of which insured the bus operator and driver. PEIC was not involved in the underlying cases

1

1  nor in their settlement as PEIC's named insured, Greyhound, never tendered the

2  cases to PEIC and was dismissed early on.

3      6.    As PEIC was not involved in the underlying cases, it had very little

4  information regarding the facts of the underlying cases and the relationships

5  between the various defendants when it was sued by Interstate.  Accordingly, in

6  addition to propounding discovery, including document requests, on Interstate,

7  PEIC subpoenaed documents from the following third parties:   1)Varner & Brandt

8  which acted as defense counsel for the defendants; Gonzales, Inc. dba Golden State

9  Transportation ("Golden State"), the bus operator, Miguel Pulido, the bus driver

10  and Sistemas International De Transporte De Autobuses, Inc. ("SITA"), Golden

11  State's parent company in the underlying cases; 2) the two plaintiffs' firms which

12  represented plaintiffs with significant injuries:  Cochran, Cherry, Givens & Smith,

13  which represented the Montero plaintiffs and Greene, Broillet & Wheeler, which

14  represented the Mendoza plaintiffs; 3)  Republic Western Insurance Company, the

15  primary insurer, which paid $5,000,000 under its auto policy, and approximately

16  $732,500 under its comprehensive general liability policy to settle the nine

17  underlying cases (Republic did not intervene in the case until approximately five

18  months later); and 4) SITA, the parent company of Golden State as SITA was the

19  named insured under the Republic and Interstate policies and Golden State was in

20  bankruptcy.

21      7.    PEIC subpoenaed the above documents to determine, *inter alia*,:

22  1) the basic facts of the accident;   2) what kind of damages were involved;

23  3)  whether the settlements of the underlying cases had been reasonable; 4) whether

24  the underlying actions had been tendered to any other insurers or entities; 5) the

25  relationship between SITA, Golden State and Greyhound relating to the leasing ,

26  the insuring and operation and control of the bus involved in the accident and which

27  entity employed Pulido; 6) whether, based on the facts of the case, there was any

28

2

potential coverage under the PEIC policy for the actions; and 7) if there was coverage under the PEIC policy for this loss, the priority between the PEIC and Interstate policies' obligation to respond to the loss.  In addition, since the Interstate policy is a policy which specifically follows form to Republic's auto policy,  PEIC subpoenaed Republic's documents to get a complete copy of Republic's auto policy and underwriting file so it could determine the scope of coverage provided by the Interstate policy.

8.     The above documents were necessary to the defense of PEIC in the case and in bringing PEIC's successful motion for summary judgment and the costs associated with serving the subpoenas were reasonable and necessary.

9.     True and correct copies of the subpoena and the bill for service of the subpoena to Varner & Brandt are attached hereto as Exhibit B.

10.    True and correct copies of the subpoena to Republic and the bill for the service of the subpoena are attached hereto as Exhibit C.  As Republic is located in Arizona, this subpoena had to be served in Arizona.  In addition, Republic initially refused to accept service of the subpoena and it took the process server two attempts to serve the subpoena on Republic.

11.    True and correct copies of the subpoena to Cochran, Cherry Given and Smith and the bill for the service of process of the subpoena are attached hereto as Exhibit D.

12.    True and correct copies of the subpoena to Greene, Broillet & Wheeler and the bill for the service of process of the subpoena are attached hereto as Exhibit E.

13.    True and correct copies of the subpoena to SITA and the bill for the service of process of the subpoena to SITA is attached hereto as Exhibit F.  As SITA is located in Texas, this subpoena had to be served in Texas.  With respect to service of process on SITA, it required several attempts to serve SITA.  The Texas Secretary of State had an incorrect address listed for SITA.  Therefore, PEIC's first

3

attempt to serve SITA was unsuccessful.  A true and correct copy of the corporate record listing for SITA is attached hereto as Exhibit G.  After the correct address was located, SITA refused to accept service the first two times the process server attempted service.  It was only after the third attempt at the correct address that the process server was successful.   Therefore, the costs associated with the service of this subpoena were reasonable and necessary.

14.   PEIC also subpoenaed and took the deposition of  Keith Koeller. Interstate had hired Mr. Koeller in relation to the underlying cases and had taken the position that he had acted as co- defense counsel for SITA, Golden State and Mr. Pulido in the underlying cases.  On this basis, Interstate alleged that it had actually defended the defendants in the underlying cases and that PEIC had a duty not only to contribute to the settlement but allegedly to defend as well. In addition, Mr. Koeller had drafted the letter tendering the underlying actions to PEIC. Therefore, PEIC took his deposition regarding his tender of the underlying suits to PEIC and information relating to his role as defense counsel and clarify Interstate's claim regarding PEIC's alleged duty to defend.   Therefore, the costs associated with the service of this subpoena were reasonable and necessary.  True and correct copies of the subpoena to Keith Koeller and the bill for the service of process of the subpoena to Mr. Koeller is attached hereto as Exhibit H.

**Fees and costs related to Depositions**

15.   There were approximately eight depositions taken in this case before PEIC's Motion for Summary Judgment was granted.  The majority of these were noticed and taken by Interstate. PEIC is entitled to the deposition fees and transcript costs for the seven depositions which it either noticed or obtained transcripts as all of the transcripts were necessarily obtained for use in the case by PEIC as set forth below. (PEIC did not order a copy of the deposition transcript of Todd Baxter's deposition.)

/ / /

16.     I attended the initial November 20, 2006 Case Management Conference in this case. At that hearing, counsel for Interstate and I both represented to the Court that this was a case that was likely to be resolved by dispositive motions. To that end, early in the case, I contacted Interstate's counsel regarding whether Interstate would agree to stipulate to certain facts and to authenticate certain documents so that the parties could forego the cost of taking depositions. I spoke with Todd Baxter, counsel for Interstate, on numerous occasions regarding stipulating to facts and documents. True and correct copies of my March 6, 2007 e-mail and attached draft Stipulation Re Facts and Authenticity and Admissibility of Documents are attached hereto as Exhibit I.

17.     However, Interstate ultimately would not agree to stipulate to any facts or to authenticate any documents.   On that basis, Interstate went ahead and took the deposition of the bus driver, Miguel Pulido in Arizona on March 12, 2007. As the deposition related to the facts of the accident and Mr. Pulido's employment both of which in part related to whether Mr. Pulido could be considered an insured under the PEIC policy, it was necessary for counsel for PEIC to attend the deposition and get a copy of the transcript. In addition, PEIC attached a portion of the transcript to its Opposition to Interstate's Cross-Motion for Summary Judgment. Therefore, this transcript was necessarily obtained for use in the case by PEIC and its costs were reasonable. True and correct copies of the Notice of Deposition of Miguel Pulido and the bill for the deposition transcript of Miguel Pulido is attached hereto as Exhibit J.

18.     On April 16, 2007, Interstate filed its Cross-Motion for Summary Judgment against PEIC which, inter alia, argued that the Interstate policy did not insure buses and did not specifically rate and identify the bus involved in the accident. As documents in the underwriting files produced by Interstate proved the fallacy of these arguments, PEIC needed to use the Interstate's underwriting documents as exhibits to its Opposition to Interstate's Cross-Motion for Summary

5

Judgment. However, despite PEIC's repeated requests that Interstate authenticate the underwriting files it produced in the case, Interstate refused to do so. True and correct copies of my April 6, 2007 letter and attached stipulation regarding the authenticity of Interstate's underwriting files is attached hereto as Exhibit K.

19.    As Interstate refused to agree to stipulate to the authenticity of these documents, PEIC was required to take the deposition of Interstate's most knowledgeable witness on underwriting, Kevin Thiel, in Denver, Colorado to authenticate Interstate's underwriting file so that it could be used as an exhibit to PEIC's Opposition. Therefore, this transcript was necessarily obtained for use in the case by PEIC and its costs were reasonable. True and correct copies of the deposition notice of Interstate's PMK witness, Kevin Theil, and billing for the deposition fees and transcript of Kevin Theil are attached hereto as Exhibit L.

20.    PEIC also subpoenaed and took the deposition of Keith Koeller on June 27, 2007. As set forth in paragraph 14 of this declaration, this deposition and the costs of its transcript were necessarily obtained for use in the case by PEIC and its costs were reasonable. True and correct copies of the deposition notice of Keith Koeller and billing for the deposition transcript of Keith Koeller are attached hereto as Exhibit M.

21.    Interstate also noticed and took the deposition of depositions of David Farrell, the former Safeco employee who had signed the lease agreement with Greyhound for the lease of the buses was relevant as Interstate was arguing that PEIC had a duty to insure the bus at issue under the lease. In addition, it was relevant to Safeco's understanding of the terms of the Lease agreement between Safeco and Greyhound including whether Safeco understood that it had given its permission to Greyhound to use the buses. Therefore, the deposition was relevant to PEIC's defenses in the case. Accordingly, the deposition and the costs of its transcript were necessarily obtained for use in the case by PEIC and its costs were

6

1   reasonable. True and correct copies of the deposition notice of David Farrell and

2   billing for the deposition transcript of David Farrell are attached hereto as

3   Exhibit N.

4        22.    After PEIC and Interstate had filed their Cross-Motions for Summary

5   Judgment, Republic entered the case as a plaintiff in intervention. Republic

6   requested that the parties continue the hearing and depositions that were scheduled.

7   While PEIC was willing to take the majority of the depositions after the hearing on

8   the parties' motions, Interstate was not. (See the parties' papers relating to

9   Republic's ex parte application previously filed with the court.) Interstate went

10   forward with taking the depositions of Republic's most knowledgeable person

11   regarding claims, Charles Norris; Republic's most knowledgeable person regarding

12   underwriting, Douglas Bell; and PEIC's most knowledgeable person regarding

13   claims, Andrew Slear.

14        23.    The depositions of Republic's most knowledgeable persons regarding

15   claims and underwriting which were noticed by both Interstate and PEIC were

16   relevant to Republic's handling of and settlement of the underlying actions

17   including whether the settlement was reasonable, the tender of the underlying cases

18   to various insurers including Interstate, whether Republic ever tendered the

19   Underlying Actions to PEIC, and the underwriting of the Republic auto policy to

20   which the Interstate policy followed form. Therefore, the depositions were relevant

21   to PEIC's defenses in the case. Accordingly, these depositions and the costs of their

22   transcripts were necessarily obtained for use in the case by PEIC and their costs

23   were reasonable. True and correct copies of the deposition notices of Republic's

24   PMK witnesses and billing for the deposition transcripts of Charles Norris and

25   Douglas Bell are attached hereto as Exhibit O.

26        24.    In addition, Republic and PEIC noticed and took the deposition of

27   Interstate's most knowledgeable person regarding claims, Theresa Donahoe. This

28   deposition was relevant to Interstate's handling of and settlement of the underlying

DECLARATION OF MARILYN A. ROGERS         Case No. EDCV06-0593 VAP (OPx)

1    actions, Interstate's tender of the underlying cases to various insurers including

2    PEIC and Interstate's claims against PEIC.  Therefore, the deposition and the costs

3    of its transcript were necessarily obtained for use in the case by PEIC and its costs

4    were reasonable.  True and correct copies of the deposition notice of Interstate's

5    PMK witness, Theresa Donahoe, and billing for the deposition transcript of Theresa

6    Donahoe are attached hereto as Exhibit P.

7         25.     Finally, Interstate took the deposition of PEIC's most knowledgeable

8    witness regarding claims, Andrew Slear.  As this was the deposition of a PEIC

9    witness, this deposition related to PEIC's position and defenses in the case.  Thus,

10   the deposition and its costs were necessarily obtained for use in the case by PEIC.

11   Further, its costs were reasonable.  True and correct copies of the deposition notice

12   of PEIC's PMK witness, Andrew Slear, the notice of deposition of Andrew Slear

13   and the billing for the deposition transcript of Andrew Slear are attached hereto as

14   Exhibit Q.

15   **Fees and Disbursements for Printing**

16        26.     PEIC is entitled to the expenses of copying the exhibits to its Motion

17   for Summary Judgment and its Opposition to Interstate's Cross-Motion for

18   Summary Judgment.  I have personally counted the number of pages of exhibits

19   which were attached to PEIC's Motion for Summary Judgment and they number

20   883 pages.  These exhibits were copied in-house at 10 cents per page four times:

21   1) for the copy filed with the Court; 2) the courtesy copy to the Judge; 3) the copy

22   served on Interstate; and 4) the copy that was later served on Republic after it had

23   intervened in the case.  The total sum of copies of these exhibits was $353.20.

24   These exhibits were necessary to support PEIC's Motion for Summary Judgment

25   and the cost of 10 cents a page was reasonable.  A true and correct copy of the

26   portion of Morales & Gary's bills regarding these copy charges is attached hereto as

27   Exhibit R.

28   / / /

8

27.    I have personally counted the number of pages of exhibits which were attached to PEIC's Opposition to Interstate's Cross-Motion for Summary Judgment and they number 603 pages.  During the time that the Opposition was being prepared, Morales & Gary's copying machine was not working.  Therefore, counsel had to send out the Opposition to be copied by an outside copy service which charges 12 cents per page.  The exhibits to the Opposition were copied at 12 cents per page four times: 1) for the copy filed with the Court; 2) the courtesy copy to the Judge; 3) the copy served on Interstate; and 4) the copy served on Republic.  The total sum of copies of these exhibits including tax was $313.31.  These exhibits were necessary to support PEIC's opposition and the cost of 12 cents a page was reasonable as Morales & Gary's in-house copier was not working.  A true and correct copy of the bill for these copies is attached hereto as Exhibit S.

**Fees for Exemplification and Copies of Papers Necessarily Obtained For Use in the Case**

28.    PEIC is also entitled to the costs of copying documents from the subpoenaed third parties.  As set forth above in paragraphs 5 through 8 of this declaration, these documents were necessarily obtained for use in the case .  In addition, these documents were used by PEIC as the factual bases for its successful Motion for Summary Judgment and for opposing Interstate's Cross-Motion for Summary Judgment.

29.    A true and correct copy of the bill for copying the subpoenaed documents from  SITA  is attached hereto as Exhibit T.

30.    A true and correct copy of the bill for copying the subpoenaed documents from Varner & Brandt is attached hereto as Exhibit U.

31.    A true and correct copy of the bill for copying the subpoenaed documents from  Cochran, Cherry Given and Smith is attached hereto as Exhibit V.

/ / /

/ / /

DECLARATION OF MARILYN A. ROGERS                                Case No. EDCV06-0593 VAP (OPx)

32.     A true and correct copy of the bill for copying the subpoenaed documents from  Greene, Broillet & Wheeler is attached hereto as Exhibit W.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 13th day of September, 2007 at Pleasant Hill, California.

MARILYN A. ROGERS

S:\DOCS\AC4699\DEC070912.MAR.wpd

10

$A$



THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

ENTERED
CLERK, U.S. DISTRICT COURT

AUG 3 1 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

FILED
CLERK, U.S. DISTRICT COURT

AUG 2 8 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

INTERSTATE FIRE &
CASUALTY COMPANY, an
Illinois corporation,

        Plaintiff

    v.

PACIFIC EMPLOYERS
INSURANCE COMPANY, a
Pennsylvania
corporation,

        Defendant.

REPUBLIC WESTERN
INSURANCE COMPANY, an
Arizona corporation,

        Plaintiff in
        Intervention,

    v.

INTERSTATE FIRE AND
CASUALTY COMPANY, an
Illinois corporation;
PACIFIC EMPLOYERS
INSURANCE COMPANY, a
Pennsylvania
corporation,

        Defendants in
        Intervention.

Case No. EDCV 06-593-VAP
(OPx)

[Motions filed on March 23
and April 16, 2007]

ORDER (1) GRANTING DEFENDANT
PACIFIC EMPLOYERS INSURANCE
COMPANY'S MOTION FOR SUMMARY
JUDGMENT AND (2) DENYING
PLAINTIFF INTERSTATE FIRE
AND CASUALTY COMPANY'S
CROSS-MOTION FOR SUMMARY
JUDGMENT

DOCKETED ON CM

AUG 3 0 2007

BY            044

(154)

1    This matter came regularly on for hearing on August

2    27, 2007.  After considering all papers filed in support

3    of, and in opposition to, Defendant Pacific Employers

4    Insurance Company's ("Pacific") Motion for Summary

5    Judgment and Plaintiff Interstate Fire and Casualty

6    Company's ("Interstate") Cross-Motion for Summary

7    Judgment, as well as the arguments of counsel advanced at

8    the hearing, the Court GRANTS Pacific's Motion and DENIES

9    Interstate's Motion, for the reasons set forth below.

10

11                      **I. BACKGROUND**

12   **A.   Procedural History**

13   Interstate filed its Complaint in this insurance

14   coverage case against Pacific on June 9, 2006, invoking

15   the Court's diversity jurisdiction (28 U.S.C. § 1332).

16   The Complaint alleges the following claims against

17   Pacific:  (1) Equitable Contribution, (2) Equitable

18   Subrogation, (3) Equitable Indemnity, and (4) Declaratory

19   Relief.  Interstate claims that Pacific's insurance

20   policy should have been exhausted before Interstate was

21   obligated under its excess insurance policy to contribute

22   to the settlement of the underlying claims.

23

24   On March 23, 2007, Pacific filed its Motion for

25   Summary Judgment.  On April 16, 2007, Interstate filed

26   its Cross-Motion for Summary Judgment and its Opposition

27   to Pacific's Motion for Summary Judgment.  On July 30,

28

2007, Plaintiff in Intervention Republic Western Insurance Company ("Republic") filed its Opposition to Pacific's Motion and Interstate's Cross-Motion. On August 3, 2007, Pacific filed its Opposition to Interstate's Cross-Motion for Summary Judgment. On August 10, 2007, Pacific and Interstate filed Replies.

**B.   Undisputed Facts**

The material facts are undisputed. They are "admitted to exist without controversy" for the purposes of these Motions. <u>See</u> Local Rule 56-3.

**1.   The Bus Accident**

On August 24, 2002, a 1998 MCI bus being driven by Miguel Pulido overturned on Interstate 10 in Riverside County, California; numerous passengers were injured. (Pacific's Statement of Uncontroverted Facts ("SUF") ¶ 1.) At the time of the accident, Pulido was employed by Gonzales, Inc., d.b.a. Golden State Transportation Company ("Golden State"). (SUF ¶ 2.) Sistemas Internacional de Transporte de Autobuses, Inc. ("SITA") owned a controlling interest of 51.4% in Golden State. (Interstate's Statement of Genuine Issues ("GI") ¶ 4.) The bus was being operated by Golden State pursuant to a sublease from Greyhound Lines, Inc. ("Greyhound"). (SUF ¶ 3.)

3

### 2.   The Bus Leases

On July 29, 1998, Greyhound entered into a Master Lease Agreement with Safeco Credit Company ("Safeco"). (SUF ¶ 15.)  Under the Master Lease Agreement, Safeco leased to Greyhound a number of commercial passenger buses, including the bus involved in the accident.  (Id.) On July 31, 1998, Greyhound entered into a Master Sublease Agreement with Golden State.  (SUF ¶ 16.)  Under the Master Sublease Agreement, Greyhound agreed to sublease to Golden State for its use the buses Greyhound had leased from Safeco, including the bus involved in the accident.  (Id.)  Under Attachment A, Schedule 2 of the Sublease, the bus involved in the accident is identified by VIN number as a subleased vehicle.  (Id.)  The term of the Sublease from Greyhound to Golden State was 84 months.  (SUF ¶ 17.)  The Lease and Sublease were in effect at the time of the accident on August 24, 2002. (SUF ¶ 20.)

### 3.   The Insurance Policies

Republic issued the primary auto liability policy to SITA and Golden State in effect at the time of the accident.  (SUF ¶ 6.)  The policy had primary liability limits of $5,000,000 and specifically described and rated the bus involved in the accident as an "Owned Auto." (SUF ¶¶ 6-7.)  The Republic policy insured Pulido for the loss resulting from the bus accident.  (SUF ¶ 8.)

1  Republic also issued a primary commercial liability

2  policy to SITA and Golden State that was in effect at the

3  time of the accident, with a $1,000,000 per occurrence

4  limit.  (Republic Statement of Uncontroverted Facts

5  ("RSUF") ¶ 8.)

6

7     Interstate issued an excess liability policy in the

8  amount of $5,000,000 per occurrence to SITA, in effect at

9  the time of the accident.  (GI ¶ 9.)  The Interstate

10  policy designated the Republic auto liability policy as

11  the "Underlying Insurer" with a policy affording

12  $5,000,000 combined single limit coverage per occurrence.

13  (Id.)  The Interstate policy states that the

14  "definitions, terms, conditions, limitations, exclusions,

15  and warranties contained in the 'first underlying

16  insurance' policy, in effect at the inception date of

17  this policy, apply to this coverage unless they are

18  inconsistent with the provisions of this policy."  (SUF ¶

19  10.)  The Interstate policy also states that "[i]f the

20  coverage provided by the 'immediate underlying insurance'

21  applies on the basis of injury or damage which occurs

22  during the period of that policy, then this coverage only

23  applies on the same basis and in a like manner to injury

24  or damage which occurs during our Policy Period shown in

25  the Declarations."  (SUF ¶ 11.)  The Interstate policy

26  insured Pulido for the loss resulting from the bus

27  accident.  (SUF ¶ 12.)

28

Pacific issued its policy to Greyhound, the lessor of
the bus involved in the accident.   (SUF ¶ 13.)

### 4.   The Underlying Lawsuits

The injured bus passengers filed nine different
underlying lawsuits against Pulido, Golden State and
SITA, among others.   (SUF ¶ 5.)   Greyhound was named and
served in two of the underlying actions, but Greyhound
was dismissed without prejudice from both cases before
their resolution by the settlement.[1]   (SUF ¶¶ 32, 46.)
Republic and Interstate funded the settlement; Republic
paid $5,000,000 under its auto policy and approximately
$732,500 under its commercial general liability policy.
(Interstate's Statement of Undisputed Facts ("ISUF") ¶
32; Republic's Statement of Genuine Issues in Response to
ISUF ("RGI") ¶ 32.)   Interstate paid $4,650,000 under its
excess liability policy.   (ISUF ¶ 32.)

## II. LEGAL STANDARD

A motion for summary judgment shall be granted when
there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 247-48 (1986).   The moving party must show
that "under the governing law, there can be but one

---

[1] Republic's objections to these two paragraphs are
overruled.

6

reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983). The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case. Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case. Id.

The burden then shifts to the non-moving party to show that there is a genuine issue of material fact that must be resolved at trial. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 256. The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has

7

1  the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322;

2  <u>Anderson</u>, 477 U.S. at 252; <u>see also</u> William W. Schwarzer,

3  A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil</u>

4  <u>Procedure Before Trial</u> § 14:144.

5

6      A genuine issue of material fact will exist "if the

7  evidence is such that a reasonable jury could return a

8  verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at

9  248.  In ruling on a motion for summary judgment, the

10  Court construes the evidence in the light most favorable

11  to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d

12  1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v.</u>

13  <u>Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31

14  (9th Cir. 1987).

15

16              **III. DISCUSSION**

17      Pacific contends that its policy is excess to

18  Interstate's policy.  If Pacific is correct, it has no

19  obligation to contribute to the loss, because Interstate

20  did not meet the limits of its policy in funding the

21  settlement.  Although Pacific advances several

22  alternative arguments for its position, California

23  Insurance Code section 11580.9(b) ("Section 11580.9(b)")

24  conclusively resolves the issue presented in these

25  motions.  The statute creates a binding presumption that

26  Pacific's policy is excess over Interstate's policy.

27  Therefore, Pacific's Motion for Summary Judgment is

28

1  granted, and Interstate's Cross-Motion for Summary

2  Judgment denied.

3

4      Interstate argues that Section 11580.9(b) does not

5  apply for two reasons.  First, Interstate asserts that

6  the statute only applies if Pacific's named insured,

7  Greyhound, "regularly" engages in the business of leasing

8  commercial vehicles without operators.  Interstate

9  concedes that Greyhound leased some buses to Golden State

10  "in the course of its business," but denies that Pacific

11  has established the necessary regularity of the business

12  practice.  (Interstate's Opp'n at 11.)

13

14      According to Pacific, on the other hand, Section

15  11580.9(b) only requires a showing that Greyhound leased

16  the bus involved in the accident to Golden State, because

17  the applicability of the statute is measured only by the

18  nature of the specific transaction underlying the loss.

19

20      Both positions had support before the statute was

21  amended, effective January 1, 2007.  See Sentry Select

22  Ins. Co. v. Fid. & Guar., 455 F.3d 956, 956-57 (9th Cir.

23  2006) (detailing the split of authority in the California

24  courts on precisely this issue and certifying the

25  question to the Supreme Court of California).  Following

26  the amendment, however, which clarified a somewhat

27  ambiguous statute, Pacific's position reflects the law in

28

California.  The legislature addressed the ambiguity by substituting "who in the course of his or her business rents or leases" for "engaged in the business of renting or leasing":

> Where two or more policies apply to the same loss, and one policy affords coverage to a named insured **who in the course of his or her business rents or leases** motor vehicles without operators, it shall be conclusively presumed that the insurance afforded by that policy to a person other than the named insured or his or her agent or employee, shall be excess over and not concurrent with, any other valid and collectible insurance applicable to the same loss covering the person as a named insured or as an additional insured under a policy with limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code.

Cal. Ins. Code § 11580.9(b) (2007) (emphasis added).

Although the bus accident predates the amendment of Section 11580.9(b), a "statute that merely clarifies, rather than changes, existing law is properly applied to transactions predating its amendment." <u>Carter v. Cal. Dep't of Veterans Affairs</u>, 38 Cal. 4th 914, 922 (2006).

1   The legislative history of the bill that amended the

2   statute, Assembly Bill 1909, demonstrates that the

3   amendment was designed only to clarify the current law.

4   See, e.g., Cal. B. Analysis, S., A.B. 1909, 2005-2006

5   Reg. Sess., at 1-2 (Aug. 7, 2006) ("This bill clarifies

6   that a policy covering an insured who in the course of

7   his or her business rents or leases motor vehicles for

8   either commercial purposes or for at least a six-month

9   term is considered excess to other insurance policies

10  covering the same loss. . . . [T]he bill eliminates the

11  ambiguities in existing law surrounding primary and

12  excess coverage of rented or leased commercial vehicles,

13  thus eliminating litigation around this issue while still

14  providing coverage to pay damages to the injured party").

15  Therefore, the current version of Section 11580.9(b)

16  applies to this case.

17

18      It is undisputed that Greyhound leased a number of

19  commercial vehicles to Golden State, including the bus

20  involved in the underlying accident.   Thus, Pacific has

21  established that its policy affords coverage to a named

22  insured who in the course of his or her business rents or

23  leases commercial motor vehicles.   Interstate's

24  opposition essentially concedes this point.

25

26      Next, Interstate argues that its policy does not

27  provide limits "at least equal to the financial

28

                                11

responsibility requirements specified in section 16056 of the California Vehicle Code" ("Section 16056"). This argument, too, lacks merit. Section 16056 merely requires coverage limits of at least "fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident . . . thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident, and . . . five thousand dollars ($5,000) because of injury to or destruction of property of others." Cal. Veh. Code § 16056(a). It is undisputed that the Interstate policy has a $5,000,000 limit, clearly exceeding the financial responsibility requirements of Section 16056.

Finally, at the hearing on this Motion, Interstate's counsel reiterated the contention in its moving papers that section 11580.9(b) should not apply here because Interstate's policy is for excess and not primary coverage. There are several reasons why this argument fails to persuade.

First, Interstate begins with the well-established proposition that California law requires all primary insurance coverage to be exhausted before any duty of coverage or to defend arises under an excess policy of insurance. (Interstate's Mot. at 9; citations omitted.) Here, however, Interstate's policy is a specific excess

1 policy; by its express terms, it is excess to the primary
2 coverage provided by the Republic policy.   In other
3 words, application of the principle cited above to this
4 case simply means that the limits of *Republic's* primary
5 policy must be exhausted before Interstate's excess
6 policy could be tapped.   It does not prevent application
7 of section 11580.9 to allocate liability between these
8 two excess carriers, Pacific[2] and Interstate.
9
10     The cases that Interstate cites in its footnote 1
11 stand for this unremarkable proposition, but do not come
12 close to the facts of the present case.   For example, in
13 Employers Ins. of Wausau v. Granite State Ins. Co., 330
14 F.3d 1214, 1221 (9th Cir. 2003), the Court considered
15 whether permitting "stacking" of primary insurance
16 coverage over several coverage periods was permitted or
17 would render excess coverage illusory; it dealt not at
18 all with application of equitable indemnity principles
19 between different excess carriers.   In Iolab Corp. v.
20 Seaboard Sur. Co., 15 F.3d 1500, 1504 (9th Cir. 1994),
21 the Ninth Circuit simply reiterated the general
22 proposition regarding exhaustion of primary coverage in a
23 setting with four primary insurers and eleven excess
24 insurers, all covering different periods of time.
25
26
27     [2]Pacific's policy provides coverage which is excess
28 to a self-insured retention.

13

1   Neither the plain language of the statute, nor any

2   authorities cited to the Court, prevent its application

3   here.  Pacific has established every fact necessary for

4   the conclusive presumption of Section 11580.9(b) to apply

5   to its insurance policy in this case.  Thus, Pacific's

6   policy is excess over Interstate's policy.

7

8                          **IV. CONCLUSION**

9       For the foregoing reasons, Pacific's Motion for

10  Summary Judgment is GRANTED.  Interstate's Cross-Motion

11  for Summary Judgment is DENIED.

12

13

14  Dated: _August 28 2007_              _Virginia C Phillips_
                                        VIRGINIA A. PHILLIPS
15                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    14

Date Transmitted:        8/31/2007 2:11:54 PM

5:06-CV-00593



Marilyn A Rogers
Morales and Gary
2300 Contra Costa Boulevard, Suite 310
Pleasant Hill, CA   94523

Number of Pages:      14

*It is hereby certified that this document was served by first
class mail postage prepaid or by fax or e-mail delivery to
counsel (or parties) at their respective address or fax
number or e-mail address of record.*



THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

FILED
CLERK, U.S. DISTRICT COURT

AUG 30 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION        BY DEPUTY

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

ENTERED
CLERK, U.S. DISTRICT COURT

AUG 31 2007

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

INTERSTATE FIRE & CASUALTY
COMPANY, an Illinois
corporation,

        Plaintiff,

   v.

PACIFIC EMPLOYERS
INSURANCE COMPANY, a
Pennsylvania corporation,

        Defendant.

REPUBLIC WESTERN INSURANCE
COMPANY, an Arizona
corporation,

        Plaintiff in
        Intervention,

   v.

INTERSTATE FIRE AND
CASUALTY COMPANY, an
Illinois corporation;
PACIFIC EMPLOYERS
INSURANCE COMPANY, a
Pennsylvania corporation,

        Defendants in
        Intervention.

Case No. EDCV 06-593-VAP(OPx)

**JUDGMENT**

DOCKETED ON CM

AUG 30 2007

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2       Pursuant to the Order filed herewith, IT IS ORDERED

3   AND ADJUDGED that Pacific's Motion for Summary Judgment

4   is GRANTED and judgment is entered in favor of Defendant

5   on Plaintiff's Complaint.

6

7   IT IS ORDERED that such judgment be entered.

8

9

10   Dated: *Aug 30 2007*

11                              VIRGINIA A. PHILLIPS
                    United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Date Transmitted:     8/31/2007 2:11:40 PM

5:06-CV-00593

Todd B Gary
Morales & Gary
2300 Contra Costa Blvd, Ste 310
Pleasant Hill, CA   94523

Number of Pages:      2

*It is hereby certified that this document was served by first class mail postage prepaid or by fax or e-mail delivery to counsel (or parties) at their respective address or fax number or e-mail address of record.*

$\beta$

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED | Dec 15 2006  2:30PM | 3750 UNIVERSITY AVE |
| | | SUITE 610 |
| VARNER & BRANDT LLP | | RIVERSIDE CA 92501 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| JULIE MAUS | |
| AGENT FOR SERVICE (CAU F 5'6 175LBS 42YRS BLONDE HAIR) | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| L. Ballesteros | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____Dec 18 2006_____          _____
                          DATE                                SIGNATURE OF SERVER

                                                L. Ballesteros
                                                ADDRESS OF SERVER

                                                633 Yesler Way  Seattle, WA 98104

Order No. 8203230



<table>
<tr><td>

**Edmund Paulino**
**2300 Contra Costa Blvd**
**Ste 310**
**Pleasant Hill, CA 94523-3961**

Attn:   Edmund Paulino
Phone:  9252881776

</td></tr>
</table>

Order #:  13189567



Date:   Dec 19 2006

Dear Edmund Paulino:

Attached is the Proof of Service associated with an order for service that you placed with LexisNexis Service of Process.  The Order Number for this order appears at the top of this page.

Thank you very much for using LexisNexis Service of Process.  If you have any questions, please contact LexisNexis Service of Process Customer Support at 1-800-644-4025 or email us at sopsupport@fileandserve.lexisnexis.com.

| | |
|---|---|
| COURT: | UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA |
| CASE NAME: | INTERSTATE FIRE & CASUALTY COMPANY,  AN ILLINOIS CORPORATION vs. PACIFIC EMPLOYERS INSURANCE COMPANY, A PENNSYLVANIA CORPORATION |
| CASE NUMBER: | EDCV06-0593 VAP(OPX) |
| HEARING DATE: | Jan 15 2007 |
| SERVEE: | VARNER & BRANDT LLP |
| PERSON SERVED: | JULIE MAUS  AGENT FOR SERVICE (CAU F 5'6 175LBS 42YRS BLONDE HAIR) |
| SERVICE DATE: | Dec 15 2006  2:30PM |
| SERVED BY: | L. Ballesteros |
| SERVICE ADDRESS: | 3750 UNIVERSITY AVE SUITE 610 RIVERSIDE, CA 92501 |
| DOCUMENTS: | SUBPOENA; ATTACHMENTS |
| SERVICE NOTE: | |

JAN-19-2007 16:22   From  RALES & GARY #:1321  To:1415318859    Page:2/16

AO 88 (Rev.11/94)  Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

INTERSTATE FIRE & CASUALTY COMPANY,
an Illinois corporation,
                    Plaintiff,

        v.                                   **SUBPOENA IN A CIVIL CASE**

PACIFIC EMPLOYERS INSURANCE COMPANY, a
Pennsylvania corporation,
                    Defendant.               Case Number:¹ EDCV06-0593 VAP(OPx)

TO: VARNER & BRANDT LLP
     5750 University Avenue, Suite 610
     Riverside, CA 92501

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | |
| | DATE AND TIME |
| | |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

    See Attachment A to Subpoena to VARNER & BRANDT LLP.

| PLACE | DATE AND TIME |
|---|---|
| VARNER & BRANDT LLP 5750 University Avenue, Suite 610   Riverside, CA 92501 | 10 AM, 1/15/2007 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature] attorney for defendant | 12-13-06 |

ISSUING OFFICER'S NAME, ADDRESS AND TELEPHONE NUMBER
Marilyn A. Rogers              MORALES & GARY
2300 Contra Costa Blvd., Suite 310     Pleasant Hill, CA 94523      925-288-1776

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

¹ If action is pending in district other than district of issuance, state district under case number.

JAN-19-2007 16:23   From:   RALES & GARY   To:141531889.   Page:3/16

AO 88 (Rev.11/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| SERVED | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may, in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## ATTACHMENT A TO SUBPOENA TO VARNER & BRANDT LLP

### DEFINITIONS

1.      "EACH," "ANY," or "ALL" means each, every, any, and all.

2.      "PERSON(S)" includes ALL people and entities whatsoever, whether real or juridical, incorporated or unincorporated.

3.      "RELATING TO" means constituting, concerning, discussing, depicting, referring to or pertaining to.

4.      "AND", "OR" connote the conjunctive, disjunctive, or both.

5.      "YOU" and "YOUR" mean and refer to Varner & Brandt LLP, its partners, including but not limited to Brendan W. Brandt, its employees, agent(s) and representative(s), and ALL PERSONS acting on behalf of ANY of the foregoing.

6.      "PACIFIC EMPLOYERS" means and refers to Pacific Employers Insurance Company, its attorney(s), agent(s) and representative(s), and ALL PERSONS acting on behalf of ANY of the foregoing.

7.      "INTERSTATE" means and refers to Interstate Fire & Casualty Company, its attorney(s), agent(s) and representative(s), and ALL PERSONS acting on behalf of ANY of the foregoing.

8.      "REPUBLIC" means and refers to Republic Western Insurance Company, its attorney(s), agent(s) and representative(s), and ALL PERSONS acting on behalf of ANY of the foregoing.

9.      "SITA" means and refers to Sistema Internacional Del Transporte De Autobuses, Inc., and includes without limitation ALL predecessors, successors, parent companies, subsidiaries, affiliates, divisions, area or regional offices, managing agents, directors, officers, employees, agents, ANY representatives of Sistema Internacional Del Transporte De Autobuses, Inc., and ALL PERSONS acting on behalf of ANY of the foregoing.

10.     "GREYHOUND" means and refers to Greyhound Lines, Inc., and includes without limitation ALL predecessors, successors, parents, subsidiaries, affiliates, divisions, area or regional

1   offices, managing agents, directors, officers, employees, agents, ANY representatives of Greyhound

2   Lines, Inc., and ALL PERSONS acting on behalf of ANY of the foregoing.

3       11.   "SAFECO" means and refers to Safeco Credit Company, and includes without

4   limitation ALL predecessors, successors, parents, subsidiaries, affiliates, divisions, area or regional

5   offices, managing agents, directors, officers, employees, agents, ANY representatives of Safeco

6   Credit Company, and ALL PERSONS acting on behalf of ANY of the foregoing.

7       12.   "GOLDEN STATE" means and refers to Gonzales, Inc. and Gonzales, Inc. d/b/a

8   Golden State Transportation Co., and includes without limitation ALL predecessors, successors,

9   parents, subsidiaries, affiliates, divisions, area or regional offices, managing agents, directors,

10   officers, employees, agents, ANY representatives of Gonzales, Inc. and Gonzales, Inc. d/b/a Golden

11   State Transportation Co., and ALL PERSONS acting on behalf of ANY of the foregoing.

12       13.   "UNDERLYING ACTIONS" includes without limitation EACH of the following ten

13   actions:

14         (1).   *Socorro Mendoza, et al. v. Gonzalez, Inc. dba Golden State*

15   *Transportation, et al.*, Riverside County Superior Court, Case No. 391704;

16         (2).   *Alfred Chacon, et al. v. Golden State Transportation Services, Inc., et*

17   *al.*, Los Angeles County Superior Court, Case No. BC298227 (later filed in Riverside

18   County Superior Court, Case No. RIC 406050);

19         (3).   *Maria Delgado, et al. v. Miguel Pulido, et al.*, Riverside County

20   Superior Court, Case No. INC 037713;

21         (4).   *Arminda Gonzalez, et al. v. Golden State Transportation Services,*

22   Riverside County Superior Court, Case No. INC 037910;

23         (5).   *Liz Huerta, et al. v. Greyhound Lines, Inc., et al.*, Los Angeles County

24   Superior Court, Case No. BC301249 (later filed in Riverside County Superior Court,

25   Case No. RIC406066);

26         (6).   *Jose Trinidad Romo, et al., v. SITA, Inc., et al.*, Riverside County

27   Superior Court, Case No. INC 037382;

28         (7).   *Martha Vazquez, et al. v. Miguel Pulido, et al.*, Riverside County

1    Superior Court, Case No. INC 037708;

2    (8).    *Gaspar Zaragoza v. Golden State Transportation Co., Inc., et al.,*

3    Riverside County Superior Court, Case No. INC 037760;

4    (9).    *Juan Montero, et al. v. Golden State Bus Lines, Inc., et al.,* United

5    States District Court, Central District, Case No. CV 03-6041; and

6    (10).    *Juan Montero, et al. v. Golden State Bus Lines, Inc., et al.,* Riverside

7    County Superior Court, Case No. INC 038854.

8    14.    "ACCIDENT" means and refers to the accident occurred on August 24, 2002, which

9    is the subject of the UNDERLYING ACTIONS.

10    15.    "BUS" means and refers to the 1998 MCI Passenger Bus, Vehicle Identification

11    Number 1M8PDMPAXWP051175, that was involved in the ACCIDENT.

12    16.    "PULIDO" means and refers to Miguel Pulido, one of the defendants in the

13    UNDERLYING ACTIONS.

14    17.    "MASTER LEASE AGREEMENT" means and refers to the lease agreement

15    SAFECO and GREYHOUND entered into on July 29, 1998 RELATING TO SAFECO's lease of

16    "intercity motor coaches" to GREYHOUND.

17    18.    "MASTER SUBLEASE AGREEMENT" means and refers to the lease agreement

18    GREYHOUND and GOLDEN STATE entered into on July 31, 1998 RELATING TO

19    GREYHOUND's sublease of "intercity motor coaches" to GOLDEN STATE

20    19.    "REPUBLIC POLICIES" means and refers to the policies issued by REPUBLIC,

21    Policy Number PBA0000343-01 in effect August 31, 2001 to August 31, 2002 and Policy  Number

22    GL20004163 in effective May 29, 2001 to August 3, 2001.

23    20.    "INTERSTATE POLICY" means and refers to the policy issued by INTERSTATE,

24    Policy Number FFX6200401 in effect August 31, 2001 to August 31, 2002.

25    21.    "CLAIM(S)" means ANY demand for something due or believed to be due,

26    including but not limited to demands for payment of moneys or for taking ANY action whatsoever.

27    22.    "COMMUNICATION(S)" means ANY oral, written or electronic transmission of

28    information, opinion, belief, idea or statement, including, without limitation, letters or other written

1 correspondence, conversations, meetings, discussions, telephone calls, memoranda, notes, messages

2 (including "e-mail," or internal or external text-messaging), telecopies, telexes and facsimile

3 transmissions.

4       23.     "DOCUMENT(S)" includes without limitation correspondence, teletype messages,

5 telegrams, contracts, agreements, memoranda, understandings, e-mails, notes, rough drawings,

6 bulletins, circulars, diagrams, interoffice communications, books of account, tax statements, ledgers,

7 journals, checks, check registers, passbooks, invoices, bills orders, quotations, stock certificates,

8 financial statements, statements of account, statements of liability, balance sheets, graphs and plans

9 and any other writing memorializing, reflecting, referring to, relating to, or evidencing the subject of

10 each DOCUMENT or group of DOCUMENTS request. The term DOCUMENTS means the

11 original, including all duplicates, copies or drafts, any non-identical copy or copies that differ from

12 the original for any reason, including but not limited to, the making of notes thereon, of any writing

13 and paper, book or record of whatever kind or description, electronic, or photographic or other

14 means, and shall include any recorded, taped, filmed or graphic matter or phonic (e.g. any tape

15 recording) or visual reproduction or record of any oral statement, conversation or event.

16

17                       **INSTRUCTIONS**

18

19       1.     The DOCUMENTS or objects subpoenaed are those DOCUMENTS or objects in the

20 possession or in the control of YOU, agents, representatives, or anyone acting for or on YOUR

21 behalf, regardless of whether such DOCUMENTS or things are possessed directly by YOU or

22 YOUR partners, directors, officers, agents, employees, representative, investigators, or by YOUR

23 agents, employees, representative or investigators.

24       3.     If any DOCUMENT or objects is not produced on the ground that it is privileged or

25 otherwise claimed to be protected against production by any rule of law, YOU shall provide the

26 following information with respect to each such DOCUMENT or object:

27       1.     Its date;

28       2.     IDENTIFY each and every author and other person who prepared or participated in

1        the preparation of it:

2      3.    IDENTIFY each and every person who ever received it from any source and for each,

3          the date it was received;

4      4.    IDENTIFY each and every person from who it was received;

5      5.    IDENTIFY all other persons to whom its content were disclosed, the dates such

6          disclosure took place and the means of such disclosure;

7      6.    The nature of the privilege or rule of law relied upon and the facts supporting YOUR

8          position with respect thereto.

9      4.    If any subpoenaed DOCUMENT or object cannot be produced in full, produce it to

10  the greatest extent possible, indicating which part of the DOCUMENT or object has been withheld,

11  and the reason for it being withheld.

12      5.    If a DOCUMENT or object once existed, but it has been lost or destroyed, or

13  otherwise is no longer in YOUR possession, IDENTIFY each DOCUMENT or object and state the

14  following concerning its loss or destruction:

15      1.    When it was lost or destroyed

16      2.    Where it was lost or destroyed;

17      3.    IDENTIFY its last known custodian.

18

19             **DEMANDS FOR PRODUCTION AND INSPECTION**

20

21  **DEMAND FOR PRODUCTION AND INSPECTION NO. 1:**

22      A complete copy of YOUR files RELATING TO the UNDERLYING ACTIONS.

23

24  **DEMAND FOR PRODUCTION AND INSPECTION NO. 2:**

25      A complete copy of the REPUBLIC POLICIES.

26

27  **DEMAND FOR PRODUCTION AND INSPECTION NO. 3:**

28      A complete copy of the INTERSTATE POLICY.

1   DEMAND FOR PRODUCTION AND INSPECTION NO. 4:

2       A complete copy of the INTERSTATE policy, Policy No. FFX6200400.

3

4   DEMAND FOR PRODUCTION AND INSPECTION NO. 5:

5       A complete copy of the PACIFIC EMPLOYERS policy, Policy Number XSA HO8002964 in

6   effect September 1, 2001 to September 1, 2002.

7

8   DEMAND FOR PRODUCTION AND INSPECTION NO. 6:

9       ALL pleadings in the UNDERLYING ACTIONS.

10

11   DEMAND FOR PRODUCTION AND INSPECTION NO. 7:

12       ALL discovery requests and responses in the UNDERLYING ACTIONS.

13

14   DEMAND FOR PRODUCTION AND INSPECTION NO. 8:

15       ALL DOCUMENTS produced in the discovery of ANY of the UNDERLYING ACTIONS.

16

17   DEMAND FOR PRODUCTION AND INSPECTION NO. 9:

18       ALL DOCUMENTS produced by ANY party to the UNDERLYING ACTIONS.

19

20   DEMAND FOR PRODUCTION AND INSPECTION NO. 10:

21       ALL deposition transcripts for depositions taken in ANY of the UNDERLYING ACTIONS.

22

23   DEMAND FOR PRODUCTION AND INSPECTION NO.11:

24       ANY witness statements taken from ANY PERSONS RELATING TO the UNDERLYING

25   ACTIONS.

26

27   DEMAND FOR PRODUCTION AND INSPECTION NO. 12:

28       ALL DOCUMENTS RELATING TO the settlement OR final resolution of EACH of the

1   UNDERLYING ACTIONS.

2

3   DEMAND FOR PRODUCTION AND INSPECTION NO. 13:

4       ALL DOCUMENTS RELATING TO the tender of ANY of the UNDERLYING ACTIONS

5   to REPUBLIC.

6

7   DEMAND FOR PRODUCTION AND INSPECTION NO. 14:

8       ALL DOCUMENTS RELATING TO the tender of ANY of the UNDERLYING ACTIONS

9   to INTERSTATE.

10

11  DEMAND FOR PRODUCTION AND INSPECTION NO. 15:

12      ALL DOCUMENTS RELATING TO the tender of ANY of the UNDERLYING ACTIONS

13  to PACIFIC EMPLOYERS.

14

15  DEMAND FOR PRODUCTION AND INSPECTION NO. 16:

16      ALL DOCUMENTS RELATING TO ANY denial OR reservation of rights letter(s) issued

17  by REPUBLIC RELATING TO the UNDERLYING ACTIONS.

18

19  DEMAND FOR PRODUCTION AND INSPECTION NO. 17:

20      ALL DOCUMENTS RELATING TO ANY denial OR reservation of rights letter(s) issued

21  by INTERSTATE RELATING TO the UNDERLYING ACTIONS.

22

23  DEMAND FOR PRODUCTION AND INSPECTION NO. 18:

24      ALL DOCUMENTS RELATING TO the business operations of SAFECO.

25

26  DEMAND FOR PRODUCTION AND INSPECTION NO. 19:

27      ALL DOCUMENTS RELATING TO the business operations of GREYHOUND.

28

1   DEMAND FOR PRODUCTION AND INSPECTION NO. 20:

2        ALL DOCUMENTS RELATING TO the business operations of GOLDEN STATE.

3

4   DEMAND FOR PRODUCTION AND INSPECTION NO. 21:

5        ALL DOCUMENTS RELATING TO the business operations of SITA.

6

7   DEMAND FOR PRODUCTION AND INSPECTION NO. 22:

8        A complete copy of REPUBLIC'S CLAIM file RELATING TO the UNDERLYING

9   ACTIONS.

10

11  DEMAND FOR PRODUCTION AND INSPECTION NO. 23:

12       A complete copy of INTERSTATE'S CLAIM file RELATING TO the UNDERLYING

13  ACTIONS.

14

15  DEMAND FOR PRODUCTION AND INSPECTION NO. 24:

16       ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY

17  COMMUNICATION by, from or on behalf of YOU regarding the subject matter of any of the

18  UNDERLYING ACTIONS.

19

20  DEMAND FOR PRODUCTION AND INSPECTION NO. 25:

21       ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY

22  COMMUNICATION by, from or on behalf of INTERSTATE regarding the subject matter of any of

23  the UNDERLYING ACTIONS.

24

25  DEMAND FOR PRODUCTION AND INSPECTION NO. 26:

26       ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY

27  COMMUNICATION by, from or on behalf of REPUBLIC regarding the subject matter of any of the

28  UNDERLYING ACTIONS.

**DEMAND FOR PRODUCTION AND INSPECTION NO. 27:**

ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY COMMUNICATION by, from or on behalf of PACIFIC EMPLOYERS regarding the subject matter of any of the UNDERLYING ACTIONS.

**DEMAND FOR PRODUCTION AND INSPECTION NO. 28:**

ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY COMMUNICATION by, from or on behalf of SAFECO regarding the subject matter of any of the UNDERLYING ACTIONS.

**DEMAND FOR PRODUCTION AND INSPECTION NO. 29:**

ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY COMMUNICATION by, from or on behalf of GREYHOUND regarding the subject matter of any of the UNDERLYING ACTIONS.

**DEMAND FOR PRODUCTION AND INSPECTION NO. 30:**

ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY COMMUNICATION by, from or on behalf of SITA regarding the subject matter of any of the UNDERLYING ACTIONS.

**DEMAND FOR PRODUCTION AND INSPECTION NO. 31:**

ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY COMMUNICATION by, from or on behalf of GOLDEN STATE regarding the subject matter of any of the UNDERLYING ACTIONS.

**DEMAND FOR PRODUCTION AND INSPECTION NO. 32:**

ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY COMMUNICATION by, from or on behalf of PULIDO regarding the subject matter of any of the

1 | UNDERLYING ACTIONS.

2

3 | DEMAND FOR PRODUCTION AND INSPECTION NO. 33:

4 | ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY

5 | COMMUNICATION by, from or on behalf of plaintiffs in the UNDERLYING ACTIONS regarding

6 | the subject matter of any of the UNDERLYING ACTIONS.

7

8 | DEMAND FOR PRODUCTION AND INSPECTION NO. 34:

9 | ALL DOCUMENTS, whether in written or computerized form, RELATING TO ANY

10 | COMMUNICATION by, from or on behalf of ANY PERSON regarding the subject matter of any

11 | of the UNDERLYING ACTIONS.

12

13 | DEMAND FOR PRODUCTION AND INSPECTION NO. 35:

14 | ALL DOCUMENTS RELATING TO ANY reports generated by OR from YOU OR on

15 | YOUR behalf RELATING TO the ACCIDENT OR the UNDERLYING ACTIONS.

16

17 | DEMAND FOR PRODUCTION AND INSPECTION NO. 36:

18 | ALL DOCUMENTS RELATING TO ANY agreement between SAFECO and

19 | GREYHOUND including but not limited to the MASTER LEASE AGREEMENT in effect during

20 | the time period of January of 1998 through January of 2003.

21

22 | DEMAND FOR PRODUCTION AND INSPECTION NO. 37:

23 | ALL DOCUMENTS RELATING TO ANY agreement between GREYHOUND and GOLDEN

24 | STATE including but not limited to the MASTER SUBLEASE AGREEMENT in effect during the time

25 | period of January of 1998 through January of 2003.

26

27 | DEMAND FOR PRODUCTION AND INSPECTION NO. 38:

28 | ALL DOCUMENTS RELATING TO the business relationship between SITA and

1   GOLDEN STATE.

2

3   DEMAND FOR PRODUCTION AND INSPECTION NO. 39:

4       ALL DOCUMENTS RELATING TO ANY agreements between SITA and GOLDEN

5   STATE RELATING TO the sharing of OR the use of buses.

6

7   DEMAND FOR PRODUCTION AND INSPECTION NO. 40:

8       ALL DOCUMENTS RELATING TO ANY agreements between SITA and GOLDEN

9   STATE RELATING TO the sharing of OR the use of drivers.

10

11   DEMAND FOR PRODUCTION AND INSPECTION NO. 41:

12       ALL DOCUMENTS RELATING TO the BUS.

13

14   DEMAND FOR PRODUCTION AND INSPECTION NO. 42:

15       ALL DOCUMENTS RELATING TO the bankruptcy of GOLDEN STATE.

16

17   DEMAND FOR PRODUCTION AND INSPECTION NO. 43:

18       ALL DOCUMENTS RELATING TO ANY federal OR state indictment of GOLDEN

19   STATE.

20

21   DEMAND FOR PRODUCTION AND INSPECTION NO. 44:

22       ALL DOCUMENTS RELATING TO any criminal prosecution of GOLDEN STATE

23   RELATING TO the ACCIDENT.

24

25   DEMAND FOR PRODUCTION AND INSPECTION NO. 45:

26       ALL DOCUMENTS RELATING TO any criminal prosecution of SITA RELATING TO the

27   ACCIDENT.

28

1  DEMAND FOR PRODUCTION AND INSPECTION NO. 46:

2      ALL DOCUMENTS RELATING TO any criminal prosecution of PULIDO RELATING TO

3  the ACCIDENT.

4

5  DEMAND FOR PRODUCTION AND INSPECTION NO. 47:

6      ALL DOCUMENTS RELATING TO the ACCIDENT.

7

8  DEMAND FOR PRODUCTION AND INSPECTION NO. 48:

9      ALL DOCUMENTS RELATING TO the employment of PULIDO, including but not

10  limited to his driving record, history, citations, violations, AND log books.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Interstate Fire & Casualty Company, v. Pacific Employers Insurance Company*
United States District Court, Central District (Riverside County)
Case No. EDCV06-0593 VAP (OPx)

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF CONTRA COSTA

I am employed by the Law Offices of Morales & Gary located at 2300 Contra Costa Blvd., Suite 310, Pleasant Hill, CA 94523. I am over the age of eighteen years and not a party to the within action.

On December 13, 2006, I served the document(s) described as: **SUBPOENA IN A CIVIL CASE** on the interested party(ies) in this action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

**Attorneys for Plaintiff**
**Interstate Fire & Casualty Company**
James P. Wagoner, Esq.
Paul J. Whitfield, Esq.
MCCORMICK BARSTOW SHEPPARD WAYTE & CARRUTH
P.O. Box 28912
5 River Park Place East
Fresno, CA 93729
559/433-1300
559/433-2300 Fax

☒  BY U.S. MAIL:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. Postal Service on the same day with postage thereon fully prepaid at Pleasant Hill, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on December 13, 2006, at Pleasant Hill, California.

Edmund Paulino

Morales & Gary
Customer:        0062226601
Invoice No:      2006120062226601

# LexisNexis® File & Serve Invoice

## Research Charges

| | |
|---|---|
| Item: | Report - Cases |
| Purchased By: | |
| Court Name: | |
| Case Number: | |
| Doc Title: | |
| Description: | |
| Item: | |
| Purchased By: | |
| Court Name: | |
| Case Number: | |
| Doc Title: | |
| Description: | |

## Service of Process Fees

| Item: | SOP Fast Service Fee (2-4 business days) | Date: | 12/13/2006 5:34:30 PM | Fee: | $145.00 |
|---|---|---|---|---|---|
| Purchased By: | Edmund Paulino | Record ID: | 13175979 | Tax: | $0.00 |
| Description: | AC4699 | | | Total: | $145.00 |

## Service Charges

*C*

IN THE
UNITED STATES DISTRICT COURT, DISTRICT OF ARIZONA

| | |
|---|---|
| **INTERSTATE FIRE & CASUALTY COMPANY, AN ILLINOIS CORPORATION**<br><br>Plaintiff/Petitioner<br><br>vs.<br>**PACIFIC EMPLOYERS INSURANCE COMPANY, A PENNSYLVANIA CORPORATION**<br><br>Defendant/Respondent | Hearing Date:<br><br>CAUSE NO:<br>**EDCV06-0593 VAP (OPX)**<br><br>AFFIDAVIT OF SERVICE OF:<br>**SUBPOENA IN A CIVIL CASE WITH ATTACHMENT** |

The undersigned, being first duly sworn, on oath deposes and says: That s(he) is now and at all times herein mentioned was a citizen of the United States, over the age of eighteen, not an officer of a plaintiff corporation, not a party to nor interested in the above entitled action, has the authority to serve pleadings in the State named below, and is competent to be a witness therein.

On the **29th day of December, 2006, at 3:23 PM**, at the address of **2721 N CENTRAL Avenue, PHOENIX, Maricopa** County, **AZ 85004**; this affiant served the above described documents upon **REPUBLIC WESTERN INSURANCE COMPANY**, by then and there personally delivering **1** true and correct copy(ies) thereof, by then presenting to and leaving the same with **Robert Pirmann, ASST VICE PRESIDENT OF CLAIMS, A white male approx. 40-45 years of age**.

No Information was provided or discovered that indicates that the subjects served are members of the U.S. military.

DATED this **29th day of December, 2006**.

_____
**Rich Kingdon, Reg. # 7238, Maricopa, AZ**

SUBSCRIBED AND SWORN to before me this 29th day of December, 2006

_____
NOTARY PUBLIC in and for the State of **Arizona**
Residing at: _Maricopa County, AZ_
My Commission Expires: _8/22/2010_

Michael P. Tannery
Notary Public - Arizona
Maricopa County
My Commission Expires
August 22, 2010

ABC's Client Name
**LexisNexis File & Serve SOP 13252044**

ORIGINAL PROOF OF SERVICE

ABC Tracking #: **8203348**

AO88  (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | 12/29/2006 | 2721 N CENTRAL AVENUE PHOENIX, ARIZONA 85004 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| ROBERT PIRMANN, ASST VICE PRESIDENT OF CLAIMS | CORPORATE |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| RICH KINGDON | AZ CIVIL PROCESS SERVER #7238 |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on      12/29/2006
_____
DATE

SIGNATURE OF SERVER

POST OFFICE BOX 7062

ADDRESS OF SERVER

PHOENIX, ARIZONA 85011

---

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c)  PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2)  (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)  (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i)  fails to allow reasonable time for compliance,
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv)  subjects a person to undue burden.

(B) If a subpoena

(i)  requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d)  DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

AO 88 (Rev.11/94) Subpoena in a Civil Case

Issued by the

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

INTERSTATE FIRE & CASUALTY COMPANY,
an Illinois Corporation,
                        Plaintiff,
            v.

PACIFIC EMPLOYERS INSURANCE COMPANY, a
Pennsylvania Corporation
                        Defendant,

**SUBPOENA IN A CIVIL CASE**

Case Number:[1] **EDCV06-0593 VAP(OPx)**

TO: Republic Western Insurance Company
    2721 North Central Ave
    Phoenix, AZ 85004

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attachment A to Subpoena to Republic Western Insurance Company

| PLACE | DATE AND TIME |
|---|---|
| Republic Western Insurance Company 2721 North Central Ave Phoenix, AZ 85004 | 10:00 AM 1/19/2007 |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  |  |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Marilyn Rogers_   Attorney for defendant | 12/20/06 |

ISSUING OFFICER'S NAME ADDRESS AND TELEPHONE NUMBER

Marilyn A. Rogers                    MORALES & GARY
2300 Contra Costa Blvd., Suite 310 Pleasant Hill, CA 94523        (925) 288-1776

(See Rule 45, Federal Rules of Civil Procedure, parts C & D on reverse)

[1] If action is pending in district other than district of issuance, state district under case number

AO 88 (Rev.11/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| **SERVED** | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) **PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.**

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to

attend trial be commanded to travel from any such place within the state in which the trial is held, or the demanding party to contest the claim.

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) **DUTIES IN RESPONDING TO SUBPOENA.**

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# ATTACHMENT TO SUBPOENA TO
# REPUBLIC WESTERN INSURANCE COMPANY

## DEFINITIONS

For purposes of these demands, the following definitions shall apply:

**CONCERNING**
This term means relating to, referring, comprising, reflecting, evidencing, constituting, pertaining to, dealing with and/or showing.

**DOCUMENTS**
By way of illustration, but not by way of limitation, **DOCUMENTS** shall include correspondence, teletype messages, telegrams, contracts, agreements, memoranda, understandings, e-mails, notes, rough drawings, bulletins, circulars, diagrams, interoffice communications, books of account, tax statements, ledgers, journals, checks, check registers, passbooks, invoices, bills orders, quotations, stock certificates, financial statements, statements of account, statements of liability, balance sheets, graphs and plans and any other writing memorializing, reflecting, referring to, relating to, or evidencing the subject of each **DOCUMENT** or group of **DOCUMENTS** request.  The term **DOCUMENTS** means the original, including all duplicates, copies or drafts, any non-identical copy or copies that differ from the original for any reason, including but not limited to, the making of notes thereon, of any writing and paper, book or record of whatever kind or description, electronic, or photographic or other means, and shall include any recorded, taped, filmed or graphic matter or phonic (e.g. any tape recording) or visual reproduction or record of any oral statement, conversation or event.

**PEIC**
This term means Defendant Pacific Employers Insurance Company, and/or any and all of its predecessors, successors, agents, brokers, attorneys, representatives or anyone acting on or for its behalf.

1

ATTACHMENT TO SUBPOENA TO

| | | |
|---|---|---|
| 1 | **IDENTIFY** | When referring to a person or entity, **IDENTIFY** means to state the |
| 2 | | name and last known business and residence addresses of the person |
| 3 | | or entity.  When referring to any writing (as defined in California |
| 4 | | Evidence Code section 250), document, data compilation or other |
| 5 | | tangible thing, **IDENTIFY** means to state the name or other unique |
| 6 | | identifying label; last known location' whether the item is in |
| 7 | | electronic format, and if so, the program used to create it; and the |
| 8 | | name and last known business and residence addresses of the last |
| 9 | | known custodian. |

**YOU AND YOUR**

This term means Republic Western Insurance Company, any parent company(s), subsidiaries, its predecessors and/or successors, as well as its agents, servants, employees, attorneys, or anyone acting on or for its behalf.

**UNDERLYING ACTIONS**

This term means any or all of the following lawsuits and the subject matter of those suits which are also the subject of the instant litigation:

1.  *Socorro Mendoza, et al. v. Gonzalez, Inc. dba Golden State Transportation, et al.*, Riverside County Superior Court, Case No. 391704;

2.  *Alfred Chacon, et al. v. Golden State Transportation Services, Inc., et al.*, Los Angeles County Superior Court, Case No. BC298227 (later filed in Riverside County Superior Court, Case No. RIC 406050);

3.  *Maria Delgado, et al. v. Miguel Pulido, et al.*, Riverside County Superior Court, Case No. INC 037713;

4.  *Arminda Gonzalez, et al. v. Golden State Transportation Services*, Riverside County Superior Court, Case No. INC 037910;

5.  *Liz Huerta, et al. v. Greyhound Lines, Inc., et al.*, Los Angeles County Superior Court, Case No. BC301249 (later filed in Riverside County Superior Court, Case No. RIC406066);

2

ATTACHMENT TO SUBPOENA TO

6.   *Juan Montero, et al. v. Golden State Bus Lines, Inc., et al.,* United States District Court, Central District, Case No. CV 03-6041

7.   *Juan Montero, et al. v. Golden State Bus Lines, Inc., et al.,* United States District Court, Central District, Case No. INC 038854;Riverside County Superior Court, Case No. INC 038854;

8.   *Jose Trinidad Romo, et al., v. SITA, Inc., et al.,* Riverside County Superior Court, Case No. INC 037382;

9.   *Martha Vazquez, et al. v. Miguel Pulido, et al.,* Riverside County Superior Court, Case No. INC 037708;

10.   *Gaspar Zaragoza v. Golden State Transportation Co., Inc., et al.,* Riverside County Superior Court, Case No. INC 037760.

**GOLDEN STATE**   This term means Gonzales, Inc. dba Golden State Transportation Company and/or any and all of its parent companies, subsidiaries and subdivisions, predecessors and/or successors, as well as its agents, servants, employees, attorneys or anyone acting on or for its behalf.

**INTERSTATE**   This term means Interstate Fire & Casualty Company and/or any and all of its parent companies, subsidiaries and subdivisions, predecessors and/or successors, as well as its agents, servants, employees, attorneys or anyone acting on or for its behalf.

**GREYHOUND**   This term means Greyhound Lines, Inc. and/or any and all of its parent companies, subsidiaries and subdivisions, predecessors and/or successors, as well as its agents, servants, employees, attorneys or anyone acting on or for its behalf.

**SITA**   This term means Sistemas Internacionale de Tranporte de Autobuses, and/or any and all of its parent companies, subsidiaries and subdivisions, predecessors and/or successors, as well as its agents, servants, employees, attorneys or anyone acting on or for its behalf.

3

ATTACHMENT TO SUBPOENA TO

**1998 MCI Bus**     This term refers to the bus that was involved in the accident that was the subject of the Underlying Actions.

**THE ACCIDENT**     This terms refers to the accident that was the subject of the Underlying Actions.

**PULIDO**     This term means Miguel Pulido, the driver of the 1998 MCI Bus, as well as his agents, servants, attorneys and/or anyone acting on or for his behalf.

**SAFECO**     This term means Safeco and/or any and all of its parent companies, subsidiaries and subdivisions, predecessors and/or successors, as well as its agents, servants, employees, attorneys or anyone acting on or for its behalf.

**MASTER LEASE AGREEMENT**

This phrase means and refers to the lease agreement **SAFECO** and **GREYHOUND** entered into on July 29, 1998 relating to **SAFECO's** lease of "intercity motor coaches" to **GREYHOUND**.

**MASTER SUBLEASE AGREEMENT**

This phrase means and refers to the lease agreement **GREYHOUND** and **GOLDEN STATE** entered into on July 31, 1998 relating to **GREYHOUND's** sublease of "intercity motor coaches" to **GOLDEN STATE**

## INSTRUCTIONS

The **DOCUMENTS** or things requested are those **DOCUMENTS** or things in the possession or in the control of **YOU**, **YOUR** attorneys, agents, representatives, or anyone acting for or on **YOUR** behalf, regardless of whether such **DOCUMENTS** or things are possessed

4

ATTACHMENT TO SUBPOENA TO

1    directly by **YOU** or **YOUR** partners, directors, officers, agents, employees, representative,

2    investigators, or by **YOUR** attorneys or their agents, employees, representative or investigators.

3         The **DOCUMENTS** or things requested are those **DOCUMENTS** or things in the

4    possession or in the control of **YOU**, **YOUR** attorneys, agents, representatives, or anyone acting

5    for or on **YOUR** behalf, which were prepared by, or directed by, refer to or relate in any way to

6    **YOU**.

7         If any **DOCUMENT** or thing is not produced on the ground that it is privileged or

8    otherwise claimed to be protected against production by any rule of law, **YOU** shall provide the

9    following information with respect to each such **DOCUMENT** or thing:

10        1.    Its date;

11        2.    **IDENTIFY** each and every author and other person who prepared or participated in

12              the preparation of it:

13        3.    **IDENTIFY** each and every person who ever received it from any source and for

14              each, the date it was received;

15        4.    **IDENTIFY** each and every person from who it was received;

16        5.    **IDENTIFY** all other persons to whom its content were disclosed, the dates such

17              disclosure took place and the means of such disclosure;

18        6.    The nature of the privilege or rule of law relied upon and the facts supporting

19              **YOUR** position with respect thereto.

20        If any requested **DOCUMENT** or thing cannot be produced in full, produce it to the

21    greatest extent possible, indicating which part of the **DOCUMENT** or thing has been withheld,

22    and the reason for it being withheld.

23        If a **DOCUMENT** or thing once existed, but it has been lost or destroyed, or otherwise is

24    no longer in **YOUR** possession, **IDENTIFY** each **DOCUMENT** or thing and state the following

25    **CONCERNING** its loss or destruction:

26        1.    When it was lost or destroyed

27        2.    Where it was lost or destroyed;

5

ATTACHMENT TO SUBPOENA TO

3.     **IDENTIFY** its last known custodian.

## DEMANDS FOR PRODUCTION

**DEMAND FOR PRODUCTION NO. 1:**

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** the **UNDERLYING ACTIONS**, including, but not limited to, any investigation conducted by **YOU** or on **YOUR** behalf **CONCERNING** the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 2:**

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** the **UNDERLYING ACTIONS**, including, but not limited to, any investigation conducted by anyone **CONCERNING** the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO 3:**

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communication by, from or on behalf of **GOLDEN STATE** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 4:**

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **YOU** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 5:**

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **GREYHOUND** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 6:**

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **PEIC** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

ATTACHMENT TO SUBPOENA TO

**DEMAND FOR PRODUCTION NO. 7**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **INTERSTATE** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 8**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **PLAINTIFFS** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 9**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **SITA** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 10**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **SAFECO** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 11**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of **PULIDO** regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO.12**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of the law firm of Verner, Salesan and Brandt regarding **THE ACCIDENT** and/or any of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 13**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** any communications by, from or on behalf of any other person or entity not identified in the

7

1    Demand Nos. 2 through 11 regarding **THE ACCIDENT** and/or any of the **UNDERLYING**

2    **ACTIONS.**

3    **DEMAND FOR PRODUCTION NO. 14:**

4        Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING**

5    the processing, investigation, handling or disposition by **YOU** or on **YOUR** behalf of any claims

6    for policy benefits under any of **YOUR** policies **CONCERNING** any of the **UNDERLYING**

7    **ACTIONS.**

8    **DEMAND FOR PRODUCTION NO. 15:**

9        **YOUR** complete claim file(s) relating to each of the **UNDERLYING ACTIONS**, whether

10    maintained in **YOUR** field office, regional office, home office, or any other office, and whether in

11    written or in computerized form.

12    **DEMAND FOR PRODUCTION NO. 16:**

13        A complete copy of **YOUR** underwriting files, whether in written or in computerized form,

14    for **YOUR** Policy No. PBA0000343-01 in effect from 8/31/01 to 8/31/02.

15    **DEMAND FOR PRODUCTION NO. 17:**

16        A complete copy of **YOUR** underwriting files, whether in written or in computerized form,

17    for **YOUR** Policy No. GLP 0004163 in effect from 5/29/01 to 8/31/01.

18    **DEMAND FOR PRODUCTION NO. 18:**

19        A complete copy of the **YOUR** policy, Policy No. PBA0000343-01 in effect from 8/31/01

20    to 8/31/02.

21    **DEMAND FOR PRODUCTION NO. 19:**

22        A complete copy of the **YOUR** policy, Policy No. GLP 0004163 in effect from 5/29/01 to

23    8/31/01.

24    **DEMAND FOR PRODUCTION NO. 20:**

25        A complete copy of the application for **YOUR** policy, Policy No. PBA0000343-01 in

26    effect from 8/31/01 to 8/31/02.

27

8

ATTACHMENT TO SUBPOENA TO

**DEMAND FOR PRODUCTION NO. 21**:

A complete copy of the application for **YOUR** policy, Policy No. GLP 0004163 in effect from 5/29/01 to 8/31/01.

**DEMAND FOR PRODUCTION NO. 22**:

A complete copy of **INTERSTATE'S** policy, Policy No. FFX6200400.

**DEMAND FOR PRODUCTION NO. 23**:

A complete copy of **INTERSTATE'S** policy, Policy No. FFX6200401.

**DEMAND FOR PRODUCTION NO. 24:**

Any and all **DOCUMENTS CONCERNING** any agreements, whether written, oral, formal or informal, between **GOLDEN STATE** and **SITA** relating to the use and/or sharing of buses for the time period of January of 1998 through January of 2003.

**DEMAND FOR PRODUCTION NO. 25:**

Any and all **DOCUMENTS CONCERNING** any agreements, whether written, oral, formal or informal, between **GOLDEN STATE** and **SITA** relating to the use and/or sharing of drivers for the time period of January of 1998 through January of 2003.

**DEMAND FOR PRODUCTION NO. 26:**

Any and all **DOCUMENTS CONCERNING** the August 24, 2002 bus accident which is the subject matter of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 27:**

Any and all **DOCUMENTS CONCERNING** the employment of **PULIDO**, including but not limited to, his employment application, personnel file, driving record, history, tickets, violations and/or log books.

**DEMAND FOR PRODUCTION NO. 28:**

Any and all **DOCUMENTS CONCERNING** the **1998 MCI BUS** including but not limited to the records of operation, federal registration, state registration, and/or title.

///

///

9

**DEMAND FOR PRODUCTION NO. 29:**

Any and all **DOCUMENTS CONCERNING** any agreement whether written, oral, formal or informal, between **SAFECO** and **GREYHOUND CONCERNING** the leasing of vehicles including but not limited to the **MASTER LEASE AGREEMENT**.

**DEMAND FOR PRODUCTION NO. 30:**

Any and all **DOCUMENTS** between **CONCERNING** any agreement, whether written, oral, formal or informal, between **SAFECO** and **GOLDEN STATE CONCERNING** the leasing of vehicles.

**DEMAND FOR PRODUCTION NO. 31:**

Any and all **DOCUMENTS CONCERNING** any agreement, whether written, oral, formal or informal, between **GREYHOUND** and **GOLDEN STATE CONCERNING** the leasing of vehicles including but not limited to the **MASTER SUBLEASE AGREEMENT**..

**DEMAND FOR PRODUCTION NO. 32:**

Any and all **DOCUMENTS CONCERNING** any agreement, whether written, oral, formal or informal, between **GREYHOUND** and **SITA CONCERNING** the leasing of vehicles.

**DEMAND FOR PRODUCTION NO. 33:**

Any and all **DOCUMENTS CONCERNING** any agreement, whether written, oral, formal or informal, between **SITA** and **GOLDEN STATE CONCERNING** the leasing of vehicles.

**DEMAND FOR PRODUCTION NO. 34:**

Any and all **DOCUMENTS CONCERNING** any agreement, whether written, oral, formal or informal, between **SITA** and **GOLDEN STATE CONCERNING** the **1998 MCI BUS**.

**DEMAND FOR PRODUCTION NO. 35:**

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING** the disposition and/or settlement of each of the **UNDERLYING ACTIONS**.

/ / /

/ / /

10

**DEMAND FOR PRODUCTION NO. 36**:

Copies of any and all settlement agreements and/or releases for each of the
**UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 37**:

Any and all **DOCUMENTS**, whether in written or computerized form, **CONCERNING**
the funding of the settlement of each of the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 38**:

Any and all **DOCUMENTS CONCERNING** the business operations of **GOLDEN
STATE.**

**DEMAND FOR PRODUCTION NO.39**:

Any and all **DOCUMENTS CONCERNING** any Federal and/or State indictment(s) of
**GOLDEN STATE.**

**DEMAND FOR PRODUCTION NO. 40**:

Any and all **DOCUMENTS CONCERNING** the bankruptcy of **GOLDEN STATE.**

**DEMAND FOR PRODUCTION NO. 41**:

Any and all **DOCUMENTS CONCERNING** the business operations of **SITA.**

**DEMAND FOR PRODUCTION NO. 42**:

Any and all **DOCUMENTS CONCERNING** the business operations of **GREYHOUND.**

**DEMAND FOR PRODUCTION NO. 43**:

Any and all **DOCUMENTS CONCERNING** any claims for benefits under any policies
issued by **YOU CONCERNING** the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 44**:

Any and all **DOCUMENTS CONCERNING** any claims for benefits under any policy(s)
**CONCERNING** the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 45**:

A complete copy of any and all denial and/or reservation of rights letter(s) issued by
**INTERSTATE CONCERNING** the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 46**:

A complete copy of any and all denial and/or reservation of rights letter(s) issued by **YOU** **CONCERNING** the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 47**:

All **DOCUMENTS CONCERNING** any criminal prosecution of **PULIDO** in relation to the accident which is the subject of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 48**:

All **DOCUMENTS CONCERNING** any criminal prosecution of **GOLDEN STATE** in relation to the accident which is the subject of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 49**:

All **DOCUMENTS CONCERNING** any criminal prosecution of **SITA** in relation to the accident which is the subject of the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 50**:

Complete copies of all Security Exchange Commission filings and/or annual reports of **GREYHOUND** during the time period of December 31, 2001 - January 1, 2003.

**DEMAND FOR PRODUCTION NO. 51**:

Complete copies of all Security Exchange Commission filings and/or annual reports of **SITA** during the time period of December 31, 2001 - January 1, 2003.

**DEMAND FOR PRODUCTION NO. 52**:

Complete copies of all Security Exchange Commission filings and/or annual reports of **GOLDEN STATE** during the time period of December 31, 2001 - January 1, 2003.

**DEMAND FOR PRODUCTION NO. 53**:

**ALL DOCUMENTS** produced by any party to the **UNDERLYING ACTIONS**.

**DEMAND FOR PRODUCTION NO. 54**:

All deposition transcripts for depositions taken in any of the **UNDERLYING ACTIONS**.

///

///

12

ATTACHMENT TO SUBPOENA TO

**DEMAND FOR PRODUCTION NO. 55:**

Any witness statements taken from any person concerning the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 56:**

All discovery requests and responses in the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 57:**

**ALL DOCUMENTS** produced in the discovery of any of the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 58:**

All pleadings in the **UNDERLYING ACTIONS.**

**DEMAND FOR PRODUCTION NO. 59:**

All **DOCUMENTS CONCERNING** coverage under any and all policies issued by **YOU** for **THE ACCIDENT** and/or any injury, loss or claims arising out of it.

**DEMAND FOR PRODUCTION NO. 60:**

All **DOCUMENTS CONCERNING** potential overage under any and all policies issued by **YOU** for **THE ACCIDENT** and/or any injury, loss or claims arising out of it.

**DEMAND FOR PRODUCTION NO. 61:**

All **DOCUMENTS CONCERNING** coverage under any and all policies issued by **PEIC** for **THE ACCIDENT** and/or any injury, loss or claims arising out of it.

**DEMAND FOR PRODUCTION NO. 62:**

All **DOCUMENTS CONCERNING** potential overage under any and all policies issued by **PEIC** for **THE ACCIDENT** and/or any injury, loss or claims arising out of it.

**DEMAND FOR PRODUCTION NO. 63:**

All **DOCUMENTS CONCERNING** coverage under any and all policies issued by **INTERSTATE** for **THE ACCIDENT** and/or any injury, loss or claims arising out of it.

/ / /

/ / /

1  **<u>DEMAND FOR PRODUCTION  NO. 64</u>**:

2  All **DOCUMENTS CONCERNING** potential overage under any and all policies issued

3  by **INTERSTATE** for **THE ACCIDENT** and/or any injury, loss or claims arising out of it.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

14

Receipt 13252044

## Receipt   submitted on 12/20/2006 2:00:29 PM (ET)

| Date/Time (ET) | Status |
|---|---|
| 12/29/2006 6:23:00 PM | Successfully performed service (Republic Western Insurance Company - Attn: Custodian of Records) |
| 1/2/2007 11:45:00 AM | Received Signed Service Affidavit for order (Republic Western Insurance Company - Attn: Custodian of Records) |
| 12/20/2006 2:00:47 PM | Order request received (Order ID 8203348) |
| 12/20/2006 2:00:32 PM | Service request has been submitted. |

### Fee Information

| Fee Information | Total Recipients | Subtotal | Tax | Total |
|---|---|---|---|---|
| SOP Fast Service Fee (2-4 business days) | 1 | $145.00 | $0.00 | $145.00 |
| SOP Witness Fee | 1 | $24.75 | $0.00 | $24.75 |
| SOP Additional Service Fee | 1 | $145.00 | $0.00 | $145.00 |
| | Totals | $314.75 | $0.00 | $314.75 |

### Document List

| Document Title | File Name | Conversion Status | View |
|---|---|---|---|
| United States District Court District of Arizona Subpoena in a Civil Case | 7859885_Subpoena-Republic.pdf | Converted | PDF format Original format |
| Signed Service Affidavit for order (Republic Western Insurance Company - Attn: Custodian of Records) | 7925769_ServiceRequestConf.pdf | Converted | PDF format Original format |

### Recipients

| Service Recipient | Address(es) | Description | Service Status |
|---|---|---|---|
| Republic Western Insurance Company - Attn: Custodian of Records | Address Type: Business 2721 North Central Ave. Phoenix, AZ 85004 | | Served |

### Service Options

| Service Options | Selected Option |
|---|---|
| Deadline for Service | 12/27/2006 |
| Hearing Date | |
| Billing Reference | AC4699 |

File Affidavit of Service with Court?   No

Special Instructions

**Contact Information**

Contact Information

| | |
|---|---|
| Name | Maureen Davis |
| Contact Email Address | mdavis@moralesgary.com |
| Organization | Morales & Gary |
| Organization Address | 2300 Contra Costa Blvd Ste 310 Pleasant Hill, CA 94523-3961 |

Phone: (925) 288-1776
Fax: (925) 288-1856
Email: dmorales@moralesgary.com